UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TINA ROSE-L SMALLEY,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

Hon. Sally J. Berens

Case No. 1:19-cv-198

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks review of the Commissioner's decision, arguing that it was not supported by substantial evidence.

For the following reasons, the Court concludes that the Commissioner's decision is supported by substantial evidence and in accordance with law. Accordingly, the Commissioner's decision will be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making a decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff filed an application for DIB on November 17, 2015, alleging that she had been disabled since May 5, 2015. (PageID.280–81.) Plaintiff claimed disability due to a back injury, arthritis, depression, anxiety disorder, high blood pressure, chronic fatigue, and myalgia. (PageID.187.) Plaintiff was 45 years old at the time of the alleged onset date. (PageID.186.) Plaintiff had previous employment as a bus driver and a home care nurse assistant. (PageID.132–34, 394.) Plaintiff's application was denied (PageID.206–209), after which time she requested a hearing before an Administrative Law Judge (ALJ) (PageID.223–24).

On December 5, 2017, ALJ Christopher Ambrose conducted a hearing at which Plaintiff, Plaintiff's friend, Tammy Cassaday, and Zachary A. Matthews, an impartial vocational expert, testified. (PageID.123–84.) On March 5, 2018, the ALJ issued a written decision finding that Plaintiff was not entitled to benefits because she was not disabled within the meaning of the Act. (PageID.108–18.) The Appeals Council denied Plaintiff's request for review on January 10, 2019. (PageID.27–30.) Therefore, the ALJ's ruling became the Commissioner's final decision. 20 C.F.R. §§ 416.1455, 416.1481. Plaintiff initiated this civil action for judicial review on March 15, 2019.

**ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of

3

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

After determining that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of May 5, 2015, the ALJ found that Plaintiff suffered from the following severe impairments: (1) degenerative disc disease of the lumbar spine; (2) depression; (3) anxiety; and

---

Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

(4) posttraumatic stress disorder.  (PageID.PageID.110.)  At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  (PageID.112-13.)  The ALJ considered listing 1.04, governing spine disorders, and listings 12.04 and 12.06, pertaining to mental disorders.

As for the listings pertaining to mental impairments, the ALJ considered both the "paragraph B" and "paragraph C" criteria for these listings.  To satisfy the "paragraph B" criteria, a claimant is required to prove one extreme limitation or two marked limitations in the following areas:

1. Understanding, remembering, or applying information;

2. Interacting with others;

3. Concentrating, persisting, or maintaining pace;

4. Adapting or managing oneself.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(B), 12.06(B).  To satisfy the "paragraph C" criteria, a claimant must show a mental disorder that is "serious and persistent," meaning that the claimant has a medically documented history of the disorder over a two-year period.  20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04(C), 12.06(C).   In addition, the claimant must show that there is evidence of medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the mental disorder, in addition to "marginal adjustment," meaning minimal capacity to adapt to changes in the environment or to demands that are not already part of the claimant's daily life.  *Id.*

The ALJ determined that Plaintiff was mildly limited in the areas of understanding, remembering or applying information and adapting or managing oneself and moderately limited

5

in the areas of interacting with others and concentrating, persisting, or maintaining pace. (Page ID.112–13.) With regard to understanding, remembering, or applying information, the ALJ noted that Plaintiff reported that she drove, handled her financial affairs, followed written instructions fairly well, watched television and used a computer and the internet. (PageID.112.) Regarding interacting with others, the ALJ noted that Plaintiff went grocery shopping and reported that she got along with authority figures and lived with her family. Also, reports from psychological evaluations indicated that Plaintiff was cooperative, motivated, and verbally responsive, and made appropriate eye contact. With regard to concentrating, persisting, or maintaining pace, a June 2016 report indicated that Plaintiff attempted all tasks, worked diligently and maintained attention/focus within normal limits, and Plaintiff's therapist consistently reported that Plaintiff's attention was focused. Finally, as to adapting and managing oneself, the ALJ noted that Plaintiff reported that she did not need special reminders to take care of personal needs and grooming, she completed her own dressing, grooming and hygiene, and made her own medical and dental appointments. (*Id.*) Finally, as to the "paragraph C" criteria, the ALJ found no evidence to support them. (PageID.113.)

With respect to Plaintiff's RFC, the ALJ determined that Plaintiff retained the capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b), except that she: (1) could not climb ladders, ropes, or scaffolds; (2) could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; (3) must avoid concentrated exposure to excessive vibration and use of moving machinery; (4) must avoid all exposure to unprotected heights; and (5) was limited to performing simple, routine, repetitive tasks in an environment away from the public and with only occasional interaction with supervisors and coworkers. (PageID.113.)

The ALJ found that Plaintiff could not perform her past work. (PageID.116.) However, based on testimony from the vocational expert, the ALJ found that approximately 365,000 office clerk, record clerk, and order filler jobs existed in the national economy that an individual of Plaintiff's age, education, work experience, and RFC could perform. (PageID.117.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

## Discussion

Plaintiff raises several issues on appeal, primarily asserting that the ALJ committed various procedural errors. Plaintiff also argues that the ALJ misstated the record regarding Plaintiff's usage of an assistive device, resulting in an RFC that not supported by substantial evidence.

### I.     Procedural Errors

#### A.     Denial of Full and Fair Hearing

Plaintiff argues that the ALJ denied her a full and fair hearing because the ALJ's "behavior and questioning" of Plaintiff "created an air of impropriety and unfairness," causing Plaintiff concern about whether the ALJ was "cranky" or "grouchy" from the onset of the hearing. (ECF No. 13 at PageID.1312.) Because an applicant for Social Security benefits has a Fifth Amendment property interest in those benefits, the applicant has a corresponding due process right to a "fundamentally fair" hearing. *Watters v. Comm'r of Soc. Sec. Admin.*, 530 F. App'x 419, 424–25 (2013) (citing *Richardson v. Perales*, 402 U.S. 389, 401–02 (1971)). In the context of ALJ bias or impropriety, in the Sixth Circuit, a court must start with the presumption that "policymakers with decisionmaking power exercise their power with honesty and integrity," and "any alleged prejudice must be evident from the record and cannot be based on speculation or inference."

*Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 436 (6th Cir. 2010) (internal quotation marks omitted). Moreover, a claim of bias or impropriety requires a "*strong showing*" of bad faith. *Id.* at 436–37 (internal quotation marks omitted) (italics in original). Evidence of "impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display" are insufficient to meet the burden of establishing bias. *Liteky v. United States*, 510 U.S. 540, 555–56 (1994). In *Wells v. Apfel*, No. 99-5548, 2000 WL 1562845 (6th Cir. Oct. 12, 2000), the court rejected the plaintiff's claim that the ALJ lacked impartiality based on his display of "unwarranted skepticism," acting as adversary to the plaintiff, and demeaning and discourteous treatment of the plaintiff and his counsel. *Id.* at *5–6. The court observed that, although "the ALJ exhibited behavior that was unbecoming of a judicial officer and was arguably discourteous to both Plaintiff, his wife, and Counsel, the ALJ did not commit reversible error." *Id.* at *5.

Plaintiff falls far short of making the requisite strong showing of bad faith or prejudice to show that the ALJ denied her a fair hearing. Nothing in the ALJ's comments or questions Plaintiff cites indicates that the ALJ harbored any animosity, impatience, or annoyance toward Plaintiff or her counsel. Early in the hearing the following exchange occurred:

> ALJ:  . . . . Excuse me. If I get hot, I get cranky. You don't want that, do you? No.
>
> CLMT: I don't care.
>
> ALJ: You don't care if I'm cranky?
>
> CLMT: No.
>
> ALJ: Oh, I do.

(PageID.125.) This innocuous exchange suggests that the ALJ perhaps took a drink of water, rolled up his sleeves, took off his coat, or did something else to keep himself from becoming hot

8

and "cranky." Given the ALJ's stated desire to not be cranky and Plaintiff's indifference to whether he was so, Plaintiff's assertion that the ALJ's statements may have prevented her "from fully testifying or asking questions for clarification out of a fear of making the [ALJ] 'grouchy'" is specious. (ECF No. 13 at PageID.1313.) Nothing in the ALJ's questioning suggests that Plaintiff, her counsel, or her case affected the ALJ's mood.[2] Moreover, Plaintiff ignores the ALJ's statements elsewhere indicating that he gave Plaintiff's case his full attention and fully appreciated her testimony. (PageID.127 ("But I take this [case] very seriously and I'll spend as much time as I need with your case just like I did with the other ones."); PageID.131 (stating that he was "glad [Plaintiff's] daughter made it back safe" from her Army deployment).)

Plaintiff also argues that she was denied a fair hearing because the ALJ did not consider Listing 12.15, as applicable to Plaintiff's posttraumatic stress disorder. While Plaintiff is correct that the ALJ did not expressly consider Listing 12.15, his failure to do so was harmless error. As the court explained in *Olson v. Commissioner of Social Security*, No. 17-cv-13441, 2018 WL 8244843 (E.D. Mich. Aug. 22, 2018), *report and recommendation adopted*, 2019 WL 1375512 (E.D. Mich. Mar. 27, 2019), because Listing 12.15 contains the same "paragraph B" and "paragraph C" criteria as Listings 12.04 and 12.06, an ALJ's failure to consider Listing 12.15 is harmless where, as here, the ALJ has determined that the plaintiff's impairments did not meet the "paragraph B" and "paragraph C" requirements of other listings. *Id.* at *4–5.

Finally, Plaintiff argues that the ALJ's decision was deficient in that it provided no meaningful analysis for his conclusion that Plaintiff did not meet the "paragraph C" criteria. The Court disagrees. After discussing his "paragraph B" findings, which Plaintiff does not challenge,

---

[2] The ALJ's other statements that Plaintiff cites are equally unsupportive of Plaintiff's claim that she was denied a fair hearing.

9

the ALJ stated: "The undersigned has also considered whether the 'paragraph C' criteria are satisfied. In this case, the evidence fails to establish the presence of the 'paragraph C' criteria." (PageID.114.) The ALJ had no need to further explain his reasons because his discussion of his "paragraph B" findings in the preceding paragraphs, along with his RFC discussion, provides an adequate basis to review the ALJ's "paragraph C" findings. "A heightened articulation standard is not required at step three so long as the ALJ makes sufficiently clear the reasons for his listing determination, so as to allow meaningful review of his decision." *Marok v. Astrue*, No. 5:08-CV-1832, 2010 WL 2294056, at *3 (N.D. Ohio June 3, 2010) (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, (6th Cir. 2006)). In his "paragraph B" findings, the ALJ cited evidence showing that Plaintiff could drive, handle her own financial affairs, and follow written instructions, and that Plaintiff was able to handle her own personal needs and grooming and made her own medical and dental appointments. All of this indicated a lack of "marginal adjustment" as required by "paragraph C." *See Werkema v. Comm'r of Soc. Sec.*, No. 1:13-cv-646, 2014 WL 5035363, at *3–4 (W.D. Mich. Sept. 22, 2014) (concluding that the ALJ's statement that his reasons for finding that the plaintiff did not meet either the "paragraph B" or "paragraph C" criteria would be further explained in his RFC analysis was sufficient to explain his step three findings). Moreover, the fact that Plaintiff points to evidence she contends could support that she met the "paragraph C" criteria is insufficient to warrant remand where, as here, substantial evidence supports the ALJ's step three findings. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

### B.  Failure to Follow Treating Source and "Good Reasons" Requirement

Plaintiff next argues the ALJ failed to comply with the treating physician rule and "good reasons" requirement in evaluating the opinion of Marie-Louise Sagan-Yewah, M.D., her treating physician. *See* 20 C.F.R. § 404.1527(c).

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). That deference is appropriate, however, only where the opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citation omitted). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must give "good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*. This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (citation omitted). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight it should be afforded. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to her assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007).

On December 17, 2015, Dr. Sagan-Yewah completed a Medical Questionnaire and Hypothetical Questions, in which she opined that Plaintiff had uncontrolled high blood pressure, chronic low back pain, depression, anxiety, and arthritis. (PageID.1255.) She also opined that Plaintiff would be unable to stand or sit for more than one to two hours, would be unable to bend, and could not lift more than 20 pounds. (*Id.*) Dr. Sagan-Yewah noted that Plaintiff was treated with medications and received spinal injections from the pain clinic. She said that Plaintiff could not work a full-time job, would need frequent work breaks, and would miss about three days of work per month. (PageID.1256–57.) The ALJ evaluated the opinion as follows:

> As for the opinion evidence, in December 2015, Marie-Louise Sagan-Yewah M.D., the claimant's treating family physician, gave the claimant work preclusive limitations effective May 2015 (Exhibit 16F). This opinion is not supported by Dr. Sagan-Yewah's reports or supported by the record as a whole. Dr. Sagan-Yewah noted multiple times that the claimant had normal gait and station (Exhibit 3F). The record shows that the claimant is able to perform a limited range of light work. In addition, the issue of disability is reserved for the Commissioner. Therefore, the undersigned gives this opinion little weight.

(PageID.115.)

Plaintiff argues that the ALJ's rather sparse analysis failed to satisfy the treating-source regulation and the "good reasons" requirement. (ECF No. 13 at PageID.1318–19.) Plaintiff argues that the ALJ's reasons for discounting the opinion were even less detailed than the ALJ's analysis and reasons in *Shields v. Commissioner of Social Security*, 732 F. App'x 430 (6th Cir. 2018), in which the Sixth Circuit observed that "[t]he ALJ did not come close to satisfying [the treating-source and "good reasons"] burden." *Id.* at 439. There, the court noted that, in rejecting the doctor's opinion, the ALJ simply assumed that the doctor—a cardiologist—was unfamiliar with the side effects of cardiac medications, and focused on a single, ambiguous statement by the doctor that the plaintiff was doing well from a cardiac standpoint. *Id.* The court observed that, if the ALJ found the opinion inconsistent with clinical or laboratory findings in the record, he failed to identify the specific discrepancies. *Id.*

Defendant responds that the ALJ found the opinion unsupported by the doctor's own reports and the record as a whole, specifically noting that examinations on multiple occasions showed that Plaintiff had a normal gait and station—a finding inconsistent with an opinion that Plaintiff was severely limited in her ability to stand and sit. Defendant notes that inconsistencies between a treating physician's treatment records and her opinion can be good reasons for discounting the physician's opinion. *See Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015).

In the Court's judgment, the ALJ's analysis of Dr. Sagan-Yewah's opinion did not fully comply with the treating-physician rule. The ALJ's primary reason for discounting Dr. Sagan-Yewah's opinion was that she observed Plaintiff's normal gait and station on a number of occasions. Defendant states that "[t]his was a significant inconsistency" (ECF No. 14 at PageID. 1334), but fails to explain why. A normal gait and station, which pertain to how an individual

13

walks and stands, *see Autry v. Astrue*, No. 5:07CV-00113, 2008 WL 345524, at *5 (W.D. Ky. Feb. 7, 2008) (citing Harvey L. McCormick, Social Security Claims and Procedures § 8:123 (5th ed.)) (noting that "[g]ait means walking, and station refers to the posture used in standing and walking"), seem reasonably and logically inconsistent with an inability to stand for more than one to two hours. But Defendant fails to explain how those findings undermine the doctor's opinion concerning Plaintiff's inability to sit for more than a couple of hours.[3] In addition, the ALJ failed to explain his statement that the opinion was not supported by the record as a whole.

Notwithstanding the ALJ's failure to comply with the treating physician rule, such error may be deemed harmless if:

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; (3) where the Commissioner has met the goal of § 1527(d)(2) . . . even though [he] has not complied with the terms of the regulation.

*Watters v. Comm'r of Soc. Sec.*, 530 F. App'x 419, 423 (6th Cir. 2013) (quoting *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011) (alteration in original; citation omitted). Although the first two circumstances are not particularly applicable in this case, regarding the third circumstance, the Sixth Circuit has held that an ALJ's decision may satisfy Section 1527(d)(2) by indirectly attacking the supportability of the treating physician's opinion or its inconsistency with other evidence in the record. *See Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470–72 (6th Cir. 2006). In *Nelson*, the court found the ALJ's failure to explain the weight given to the plaintiff's treating sources was harmless because the ALJ indirectly attacked their opinions by discussing other record evidence that showed the opinions to be inconsistent with the evidence as a whole. *Id.* at 470–71;

---

[3] Plaintiff argues in her reply that her gait has nothing to do with Dr. Sagan-Yewah's opinion regarding the impact of the side-effects of Plaintiff's medications on her ability to work. (ECF No. 15 at PageID.1349.) However, Plaintiff consistently denied side effects from her medications. (PageID.1074, 1082, 1089, 1097.)

14

*see also Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 440–41 (6th Cir. 2010) (concluding that, although some of the ALJ's reasons for rejecting the treating physician's opinion were not good reasons, any error was harmless because the ALJ attacked the supportability of the physician's opinion by pointing to the absence of medical findings to support it and indirectly attacked the consistency of the opinion that the plaintiff could not lift or carry any weight at all).

Here, the ALJ indirectly attacked the supportability of Dr. Sagan-Yewah's opinion, as well as its consistency with the record as a whole. In particular, the ALJ noted:

> The medical records establish that the claimant has degenerative disc disease of lumbar spine, depression, anxiety and PTSD. However, the claimant was perform [sic] heavy worjk [sic] with these impairments prior to her alleged onset date (Exhibit 3E). In May 2015, x-rays of the lumbosacral spine were negative (Exhibit 5F). An [May 12, 2015] MRI of the lumbar spine revealed no change from November 2014 MRI (Exhibits 3F and 5F). In January 2016, Dr. Bez reported that straight leg raising tests bilaterally were negative, lower extremity muscle strength was 5/5, deep tendon reflexes were 2/4 and equal, bilateral lower extremity was within normal limits, and no significant gait disturbances was observed (Exhibit 4F. In April 2016, Monica Mohan M.D., a rheumatologist, noted that the claimant had full range of motion and no tenderness, swelling or effusion of multiple joints. She stated that the claimant had normal extremity, neurological and psychiatric exams (Exhibit 6F). . . . In February 2017, the claimant reported that she was walking on the treadmill almost daily (Exhibit 14F). . . . She has had no back surgery.

(PageID.115–16.)[4] The ALJ's statement not only points to a lack or evidence supporting Dr. Sagan-Yewah's opinion, but it also shows that it was inconsistent with the evidence in the record as a whole. Thus, any error was harmless.

### C. Failure to Consider Effects of Plaintiff's Obesity

Plaintiff next argues that the ALJ erred in failing to consider the effects of Plaintiff's obesity in accordance with Social Security Ruling (SSR) 02-1p, 2002 WL 34686281 (S.S.A. Sept.

---

[4] Plaintiff testified at the hearing that she stopped working in May 2015 due to an automobile accident. (PageID.142.)

12, 2002). The ALJ did not specifically address Plaintiff's obesity in his decision. Plaintiff notes that her medical records show that her Body Mass Index (BMI) is 35, which renders her obese under SSR 02-1p, and the ALJ should have considered this condition in combination with her other impairments.

Obesity is no longer a listed impairment, but SSR 02-1p directs ALJs to consider its effects when evaluating a claimant's disability. *Coldiron*, 391 F. App'x at 442. The Sixth Circuit has observed that SSR 02-1p does not mandate "any particular procedural mode of analysis for obese disability claimants." *Id.* at 443 (quoting *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006)). It has also recognized that an ALJ must "consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009). However, the impact of obesity must be examined in the context of the claimant's medical record because it "may or may not increase the severity or functional limitations of the other impairments." SSR 02-1p, 2002 WL 34686281, at *6.

The ALJ did not err in failing to address Plaintiff's obesity in his decision. First, the Sixth Circuit has held that "the ALJ does not need to make specific mention of obesity if he credits an expert's report that considers obesity." *Bledsoe*, 165 F. App'x at 412 (citing *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)). Here, the ALJ gave great weight to the opinion of State agency consultant Sonia Ramirez-Jacobs M.D., which expressly considered Plaintiff's BMI of 35. (PageID.115, 195.) In addition, Plaintiff did not raise obesity as an impairment that affected her ability to work in her application or at the ALJ hearing. In *Cranfield v. Commissioner of Social Security*, 79 F. App'x 852 (6th Cir. 2003), the court rejected the plaintiff's assertion that the ALJ was bound to consider her obesity as a possible impairment because her doctors' reports mentioned her obesity. The court observed, "[t]he problem with this argument is the ALJ never received

16

evidence suggesting Ms. Cranfield or her doctors regarded her weight as an impairment. In fact, Ms. Cranfield provided no evidence that obesity affected her ability to work." *Id.* at 857–58; *see also Smith v. Astrue*, No. 3:10CV1829, 2012 WL 1232272, at *4–5 (N.D. Ohio Apr. 12, 2012) (finding no error in the ALJ's failure to consider the plaintiff's obesity where the plaintiff presented no evidence to the ALJ indicting that her obesity impacted her ability to work, did not testify about her obesity and did not list obesity as an impairment in her disability report). The same is true here.

## II. Misstatement of the Record and Failure to Fully Consider Subjective Complaints

In her final claim of error, Plaintiff argues that the ALJ misstated the record regarding Plaintiff's usage of a cane. Relatedly, Plaintiff argues that the ALJ failed to properly evaluate her subjective symptoms.

The ALJ determined that plaintiff "ambulates without an assistive device." (PageID.116.) Plaintiff argues that "[t]his statement is simply false," as it is at odds with evidence in the record, as well as Plaintiff's testimony, regarding her need to use a cane. (ECF No. 13 at PageID.1322.) The Court disagrees, as this finding was supported by substantial evidence. Plaintiff testified at the hearing that she began using a cane following a knee surgery that she had a couple of months prior to the hearing. (PageID.151.) Plaintiff's primary physician had ordered the cane. (*Id.*) There was ample evidence that Plaintiff did not require a cane to ambulate prior to, or apart from, her knee surgery or the condition that necessitated it. Plaintiff's medical records showed that, when not experiencing the knee pain before and after her surgery, she had a normal gait. (PageID.416, 423, 430, 436, 1087, 1093.) In addition, the ALJ considered that Plaintiff walked on a treadmill for exercise, an activity that undermined any claimed need for an assistive device. (PageID.116, 775 ("[S]he states she has been doing an exercise regime, walking on a treadmill almost daily, and

17

has lost 23 pounds."). Plaintiff cites no evidence indicating that her need was anything other than temporary. *See Jones v. Comm'r of Soc. Sec.*, 1:18-cv-578, 2019 WL 4120757, at *5 (W.D. Mich. Aug. 5, 2019), *report and recommendation adopted*, 2019 WL 4073376 (W.D. Mich. Aug. 29, 2019) ("Temporary cane use would not warrant an RFC restriction.").

As for Plaintiff's subjective symptoms, the ALJ's analysis satisfied the requirements of SSR 16-3p, which guides an ALJ in evaluating a claimant's statements concerning the intensity, persistence, and limiting effects of symptoms of an alleged disability. As explained in *Palmer v. Comm'r of Soc. Sec.*, No. 1:17-cv-577, 2018 WL 4346819 (W.D. Mich. Aug. 9, 2018), *report and recommendation adopted*, 2018 WL 4334623 (W.D. Mich. Sept. 22, 2018):

> The longstanding two-part analysis for evaluating symptoms applies. 20 C.F.R. § 404.1529(a). "An ALJ must first determine 'whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms.' If such an impairment exists, the ALJ 'must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.'" *Morrison v. Commissioner*, 2017 WL 4278378, at *4 (quoting *Rogers v. Commissioner*, 486 F.3d 234, 247 (6th Cir. 2007)). Relevant factors to be considered in evaluating symptoms are listed in 20 C.F.R. § 404.1529(c)(3). "It is well established that the ALJ is not required to discuss every factor or conduct a factor-by-factor analysis." *Pratt v. Commissioner*, No. 1:12-cv-1084, 2014 WL 1577525, at *3 (W.D. Mich. Apr. 21, 2014) (collecting cases); *see also Carsten v. Commissioner*, No. 15-14379, 2017 WL 957455, at *4 (E.D. Mich. Feb. 23, 2017).

*Id.* at *6.

Consistent with the prior ruling (SSR 96-7p), *see Rogers*, 486 F.3d at 248, SSR 16-3p explains that an ALJ's decision must "contain specific reasons for the weight given to an individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so that the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." 2017 WL 5180304, at *10. Moreover, the same rules of review apply to an ALJ's assessment of a claimant's symptoms under SSR 16-3p that applied to a credibility assessment under SSR 96-7p. That is, the ALJ's determination must be afforded

18

deference so long as it is supported by substantial evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.* The Sixth Circuit has said that an ALJ's "credibility findings may not be disturbed absent compelling reason," and in general, "are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (internal quotation marks omitted).

Here, the ALJ's assessment of Plaintiff's subjective symptoms complied with SSR 16-3p and was supported by substantial evidence. That the ALJ did not specifically mention the factors set forth in 20 C.F.R. § 404.1529(c), or did not discuss them all, does not undermine his analysis. As set forth above, the ALJ considered a number of factors in evaluating Plaintiff's symptoms, including that: (1) a May 2015 MRI of the lumbar spine revealed only mild to moderate pathology; (2) Plaintiff reported that she engaged in a wide range of activities; (3) Plaintiff had only moderate mental health symptoms; (4) Plaintiff had been able to work prior to her May 2015 alleged onset date, despite the existence of her impairments, which had not significantly worsened; (5) Plaintiff's examination and treatment records were inconsistent with her reported symptoms; and (6) the opinions of consulting physicians showed that Plaintiff was not as limited as she alleged. (PageID.115–16.) Accordingly, Plaintiff fails to demonstrate error in the ALJ's analysis.

## CONCLUSION

For the reasons stated herein, the Commissioner's decision is **affirmed**.

An Order consistent with this Opinion will enter.

Dated: July 10, 2020 /s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge